**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:22-cv-00357-RJC-DCK**

| | | |
|---|---|---|
| BRAUN, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| BRAUN, et al. | ) ) | <u>**ORDER**</u> |
| Defendants. | ) ) ) ) | |

_____ )

This matter is before the Court on Plaintiff's Amended Complaint (Doc. No. 26), Motions for Temporary Restraining Orders and Preliminary Injunctions, (Doc. Nos. 41, 52, and 87), and Response to this Court's Order to Show Jurisdiction, (Doc. No. 101), and on Defendants' Motions to Dismiss, (Doc. Nos. 57, 60, 63, 82, 94, 103, 105). Having considered the pleadings, filings, facts, and relevant law, Defendants' Motions to Dismiss, (Doc. Nos. 57, 60, 63, 82, 94, 103, 105), are **GRANTED**, Plaintiff's Amendment Complaint, (Doc. No. 26), is **DISMISSED**, and her Motions for Temporary Restraining Orders, (Doc. Nos. 41, 52, and 87), are **DENIED**.

### I. Background

Staci Anne Braun ("Plaintiff") filed this action following a custody battle with her ex-romantic partner, David F. Braun, over their daughter. (Doc. No. 1). In her amended complaint, (Doc. No. 26), Plaintiff asserts a collection of state and federal claims against seventeen defendants, alleging Defendants conspired to deprive her of her civil rights by, _inter alia_, defaming her so that she would lose custody of her daughter, organizing a cover-up on behalf of her estranged romantic partner, and, ultimately, removing her daughter from her custody without due process. Defendants include David F. Braun, his lawyers and their law firm, the State of North Carolina,

1

the North Carolina Department of Social Services ("NCDSS"), Eastern Carolina University, the children's home that housed Plaintiff's daughter and the "house parents" who cared for her, several doctors, several social workers, Plaintiff's former attorney, and the judge who presides over Plaintiff's custody action.

Plaintiff's relevant concerns began on September 1, 2022, when NCDSS "took [her daughter] to be interviewed by forensic examiners" following allegations of abuse. (Doc. No. 26, ¶ 17). After the interview, "DSS was forced to take [the daughter] into custody and [has] since placed her in foster care, falsely alleging that [Plaintiff] was emotionally abusive." (*Id.*). After that transfer, Plaintiff alleges that the North Carolina state court failed to hold a custody hearing (an allegation which Plaintiff contradicts elsewhere). (Doc. No. 41, at 9 (discussing an October 2022 hearing)); *see also* Section III, *supra* (discussing contradictions within Plaintiff's filings).

In any event, Plaintiff alleges that DSS wrongfully transferred her daughter to foster care, that the state court failed to hold the requisite custody hearings, and that anyone who spoke against Plaintiff – either in court or by some other means – did so defamatorily. Because Plaintiff brings claims under several federal statutes, including 42 U.S.C. § 1981, 1983, and 1985, she requests that this Court exercise supplemental jurisdiction (or, in the alternative, she asserts diversity jurisdiction) to resolve her underlying claims arising under state law, including her custody issues, slander and libel by a bevy of Defendants, and alleged violence by David F. Braun.

## II.     Plaintiff's Claims Arising Under State Law

Undoubtedly, disputes of child custody are heart-wrenching, and sexual violence against children – which Plaintiff alleges – is despicable. This Court, however, is not the venue in which to right many of those alleged wrongs. Federal courts enjoy limited jurisdiction, and they possess only powers authorized by Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*,

511 U.S. 375, 377 (1994). Disputes related to child custody are excluded from that limited jurisdiction. *Ankenbrandt v. Richards*, 504 U.S. 689, 702 (1992). Under "the domestic relations exception" to federal jurisdiction, federal courts do not have the power to intervene with regard to child custody or visitation decrees. *In re Burrus*, 136 U.S. 586, 594 (1890). Thus, some of the relief that Plaintiff seeks – requiring the state of North Carolina and its agencies to take certain action in relation to her daughter's custody case – is outside this Court's jurisdiction.

Much of the relief Plaintiff seeks is also barred by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine generally prohibits lower federal courts from reviewing state court decisions, *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), and prevents the exercise of appellate jurisdiction of lower federal courts over state-court judgments. *Verizon Md. Inc. v, Public Serv. Comm'n of Md.*, 535 U.S. 635, 644 n. 3 (2002). "[A] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in the United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994). "Federal courts are prohibited from determining that state court judgments were erroneously entered or from taking action that would render state court judgments ineffectual." *Alden v. Jones*, No. 5:19-CV-00115-KDB-DCK, 2020 WL 912783, at *5 (W.D.N.C. Feb. 25, 2020). This prohibition extends not only to issues decided by a state court but also to those issues "inextricably intertwined with questions ruled upon by a state court." *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997).

A federal claim is inextricably intertwined with a state court where, "in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual." *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997) (internal quotation marks omitted)

3

(alternations in original). This includes "constitutional claims that are inextricably intertwined with questions ruled upon by a state court, as when success on the federal claim depends upon a determination 'that the state court wrongly decided' the issues before it." *Alden*, 2020 WL 912783, at *5 (quoting *Plyler*, 129 F.3d. at 731).

The success of Plaintiff's claims in this action appears to be inextricably intertwined with her custody-related claims at issue in North Carolina state court, and thus, this Court lacks jurisdiction over those claims under the *Rooker-Feldman* doctrine.[1] Further, a federal court should not interfere in civil proceedings in which important state interests are involved, except in the most narrow and extraordinary of circumstances. *See Younger v. Harris*, 401 U.S. 37, 43-44 (1971) (addressing abstention in criminal proceedings); *Huffman v. Pursue, Ltd*., 420 U.S. 592 (1975) (addressing abstention in civil proceedings). This includes proceedings related to the temporary removal of a child in a child-abuse context. *See Moore v. Sims*, 442 U.S. 415, 423 (1979). The child removal proceedings at issue here involve important state interests, and the Court finds that narrow and extraordinary circumstances do not exist. Accordingly, the Court will not review any North Carolina orders with regards to the removal and custody of Plaintiff's daughter, nor will it insert itself into the ongoing proceedings in the North Carolina courts.

Moreover, to the extent that Plaintiff asserts state law claims under this Court's diversity jurisdiction, the Court lacks jurisdiction because this action is not totally diverse. Under 28 U.S.C. § 1332, which extends federal jurisdiction to cases involving "citizens of different states," diversity

---

[1] *See, e.g*., *Ihenachor v. Md*., No. CV RDB-17-3134, 2018 WL 1863678 (D. Md. April 18, 2018) (finding success on plaintiff's claims depended on a determination that the state court wrongly decided issues of physical custody, legal custody, and child support, so that they were inextricably intertwined with the state court decision and thus the district court lacked subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine); *Richardson v. NC Dep't of Health & Hum. Servs.*, No. 5:12-CV-00180-D, 2012 WL 4426303 (E.D.N.C. June 29, 2012), *report and recommendation adopted*, No. 5:12-CV-180-D, 2012 WL 4426059 (E.D.N.C. Sept. 24, 2012).

4

of citizenship must be complete; that is, "no plaintiff may share a citizenship with any defendant." *Navy Fed. Credit Union v. LTD Fin. Servs., LP*, 972 F.3d 344, 352 (4th Cir. 2020). This Court lacks diversity jurisdiction over these claims because Plaintiff, a North Carolina citizen, shares North Carolina citizenship with a myriad of Defendants. (Doc. No. 26, at 5-12).

Finally, the Court declines to exercise supplemental jurisdiction over any of Plaintiff's state law claims. Plaintiff's tangle of state and federal claims present very few claims over which this Court has jurisdiction, and those remaining few are dismissed for the reasons discussed below, *see* Section III, *supra*. Thus, this Court lacks jurisdiction over Count II (creating and publishing false documents); Count III (assault, rape, and sodomy); and Count IX (slander and libel), and those claims are dismissed. *See* 28 U.S. Code § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction").

In addition, to the extent that Counts I, IV, V, VI, VII, VIII, and X seek relief for conduct inextricably intertwined with Plaintiff's custody claims, those claims are dismissed under the *Rooker-Feldman* and *Younger* abstention doctrines. Specifically, this Court will abstain from asserting jurisdiction over any of Plaintiff's claims for injunctive relief, which include: (1) an injunction prohibiting all Defendants from making certain statements related to Plaintiff's defamation claims; (2) an injunction requiring the State of North Carolina to protect Plaintiff's child from a private party and to follow certain state laws; and (3) an injunction prohibiting the Reeves Law Firm, John Reeves, or Tamara DiVenere from representing David F. Braun or "divulging any information about" Plaintiff.

Plaintiff's first injunction request relates to issues of state law, and, as explained above, Plaintiff failed to establish diversity jurisdiction in this action and the Court declines to exercise

supplemental jurisdiction. Plaintiff's second injunction request is "inextricably intertwined" with her claims at issue in her state court proceedings and thus barred by the *Rooker-Feldman* and *Younger* abstention doctrines, and, moreover, the request seeks relief not available in this Court. *See DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189 (1989) (holding the State has no duty to provide its members with adequate protective services); *Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 390-91 (4th Cir. 1990) ("[V]iolations of state law cannot provide the basis for a due process claim.").

Plaintiff's final request regarding John Reeves' and Tamara DiVinere's representation of David F. Braun cannot serve as a basis for civil liability, *see L. v. Priority Tr. Servs. of N. Carolina, LLC*, 375 F. App'x 345, 348 (4th Cir. 2010) ("[C]omplaint did not plead against [Defendant] a violation of anything other than the North Carolina Rules of Professional Conduct, which … cannot serve as a basis for civil liability in North Carolina"), and the remainder of that request relates only to issues of state law. Moreover, Plaintiff's third injunction request is barred by the *Rooker-Feldman* doctrine. In her state court action, Plaintiff filed a nearly identical request for disqualification of counsel, and the state court denied that request. (Doc Nos. 64-1, 64-2). Thus, even if Plaintiff's third request satisfied other pleading requirements, the *Rooker-Feldman* doctrine prohibits this Court from reviewing and reversing that state court order. Plaintiff's requests for injunctive relief are therefore denied in their entirety.

### III. Plaintiff's Claims Arising Under Federal Law

Plaintiff's claims over which this Court could have jurisdiction (those under 42 U.S.C. §§ 1981, 1983, and 1985) are jurisdictionally barred or improperly pled. "There are instances in which sua sponte dismissals of complaints under Rule 12(b)(6) are appropriate." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021). In such instances, the District Court must

exercise fair procedure: "[n]amely, the party whose complaint stands to be dismissed must be afforded notice and an opportunity to amend the complaint or otherwise respond." *Id*. Plaintiff received notice of this Court's intent to dismiss her action. (Doc. No. 99). Though the Court lacks jurisdiction over Plaintiff's underlying concern (her child custody dispute), Plaintiff seeks to employ 42 U.S.C. §§ 1981, 1983, and 1985 in this matter.

Plaintiff offers many allegations – some of them directly conflicting with one another – but she packages many of her claims as legal conclusions. The Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 8, establish a high bar:

> The pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertions" devoid of "further factual enhancement."

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (cleaned up). Thus, in considering Defendants' motions to dismiss, this Court will entertain Plaintiff's claims only so far as they present reasonable inferences, and the Court will not allow allegations that "the-defendant-unlawfully-harmed-me" to stand. *See id.*

As Plaintiff is proceeding *pro se*, she is afforded more leniency – "however inartfully pleaded … the allegations of the pro se complaint, [are held] to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Weller v.*

*Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 390-91 (4th Cir. 1990) ("[C]ourts traditionally view civil rights complaints, particularly those brought pro se, with special judicial solicitude.") (internal quotations omitted). "Principles requiring generous construction of pro se complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Courts are not required "to conjure up questions never squarely presented to them," and "District judges are not mind readers. Even in the case of pro se litigants, they cannot be expected to construct full blown claims from sentence fragments." *Id.*; *see also Weller*, 901 F.2d at 391 ("[A] district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'") (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir.1985)). With these principles in mind, the Court addresses Plaintiff's remaining claims.

### 1. Plaintiff's Claims under 42 U.S.C. § 1985

To state a claim under 42 U.S.C. § 1985, a plaintiff must show (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016). "Allegations of parallel conduct and a bare assertion of a conspiracy are not enough for a claim to proceed." *Id.* Plaintiff failed to plausibly plead that any Defendants are motivated by a specific class-based, invidiously discriminatory animus, and she failed to plead any facts beyond a bare assertion of conspiracy between the Defendants. (Doc. No. 101 ("The Defendants continually plead that I am '*just an angry woman*' … These Defendants are motivated by and specify a specific class-based, invidiously discriminatory animus")); *see Iqbal*, 556 U.S. a 678 (To

survive a motion to dismiss, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Thus, all of Plaintiff's claims under 42 U.S.C. § 1985 fail as a matter of law.

### 2. Plaintiff's Claims Under 42 U.S.C. § 1981

An action under 42 U.S.C. § 1981 "must be founded on purposeful, racially discriminatory actions." *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999). "To state a claim under 42 U.S.C. § 1981, a plaintiff must allege she is a member of a racial minority, that the defendant discriminated against her with respect to one of the rights enumerated in 1981(b), and that the defendant discriminated intentionally on account of the plaintiff's race." *Brooks v. Coble Settlement*, No. 1:14CV280, 2015 WL 862546, at *6 (M.D.N.C. Feb. 27, 2015). Plaintiff fails to allege she is a member of a racial minority or that any defendants discriminated against her because of her race. Thus, all Plaintiff's claims under 28 U.S.C. § 1981 fail as a matter of law.

### 3. Plaintiff's Claims Under 42 U.S.C. § 1983

To state a claim under § 1983, a plaintiff must allege "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law*." Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997); *accord Thomas*, 841 F.3d at 637; *see also Rendell–Baker v. Kohn*, 457 U.S. 830, 838 (1982) (establishing that § 1983's "color of law" requirement is the equivalent to the Fourteenth Amendment's "state action" requirement). "The color of law requirement excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Thomas*, 841 F.3d at 637; *see also Lugar v. Edmondson Oil Co*., 457 U.S. 922, 923 (1982) ("Conduct allegedly causing the deprivation of a constitutional right protected against infringement by a State must be fairly attributable to the State. In determining the question of "fair attribution," (a) the deprivation must be caused by the exercise of some right

9

or privilege created by the State or by a rule of conduct imposed by it or by a person for whom it is responsible, and (b) the party charged with the deprivation must be a person who may fairly be said to be a state actor, either because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State."). Here, Plaintiff alleges deprivations of her rights to due process under § 1983.

### A. Due Process Claims Against Private Actors

To begin, Plaintiff may only lodge due process claims under § 1983 against state actors. "A private party is considered a state actor for purposes of § 1983 if 'the deprivation is caused by the exercise of some right or privilege created by the State and the party charged with the deprivation is a person who may fairly be said to be a state actor.' The second part of this test is satisfied if the defendant 'has acted together with or has obtained significant aid from state officials.'" *Gregg v. Ham*, 678 F.3d 333, 340 (4th Cir. 2012) (quoting *Lugar*, 457 U.S. at 937) (cleaned up); *see also Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) ("[S]tate action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.").

"The required nexus may be present if the private entity has exercised powers that are 'traditionally the exclusive prerogative of the State.'" *Mentavlos*, 249 F.3d at 311 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)); *see also Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001) ("We have treated a nominally private entity as a state actor ... when it has been delegated a public function by the State."). "A state also will be held responsible for a private actor's decision when the state's engagement or encouragement is so significant that 'the choice must in law be deemed to be that of the State.'" *Peltier*, 37 F.4th at 115 (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 842, (1982)).

10

None of Plaintiff's claims against private actors outline action that is "fairly attributable" to the state. After direction from this Court to identify any activity actionable under § 1983, (Doc. No. 99), Plaintiff brought one allegation: that John Reeves leveraged his position as former counsel for the Department of Social Services against her in her state court action, where he now represents her ex-romantic partner, David F. Braun. Such action, she alleges, proves Reeves is "working in concert with the state actors under color of law." (Doc. No. 101, at 6). Plaintiff's allegations against Reeves are, essentially, that because Reeves sought custody of the child on behalf of David F. Braun, and because the State eventually did place the child into David F. Braun's custody, that Reeves was acting in concert with state officials.

The logic behind these allegations is flawed; Reeves acted on behalf of his client, and the fact that the State found David F. Braun's position compelling does not transform Reeves into a state actor. *Cf. Polk Cnty. v. Dodson*, 454 U.S. 312, 312 (1981) (holding that a defense lawyer paid by the state is not a state actor because the relationship between the lawyer and client is "identical to that existing between any other lawyer and client, except for the source of … payment. The legal system posits that a … lawyer best serves the public, not by acting on the State's behalf or in concert with it, but rather by advancing the undivided interests of the client. This is essentially a private function for which state office and authority are not needed"). Thus, John Reeves' past representation of NCDSS does not transform him now – or even then – into a state actor.[2]

Finally, Plaintiff failed to allege, either in her Amended Complaint (Doc. No. 26) or in her Response to this Court's Order to Show Jurisdiction, (Doc. No. 101), how any other private actors

---

[2] Even if Reeves could be considered a state actor, he would be entitled to absolute immunity as social worker engaging in prosecutorial action. *Vosburg v. Dep't of Soc. Servs.*, 884 F.2d 133, 137-38 (4th Cir. 1989).

might be considered state actors, beyond stating that all defendants were "working in concert." (Doc. No. 101, at 6). Such "naked assertions devoid of further factual enhancement" are inadequate. *Iqbal*, 556 U.S. at 678.[3]

Thus, Plaintiff's claims under 42 U.S.C. § 1983 against all private actors (and private institutions) fail as a matter of law. This includes all claims under § 1983 against David F. Braun, the Reeves Law Firm, John Reeves, Tamara DiVenere, John Wright, Christopher Scheaffer, the Crossnore School and Children's Home, Glenn Pitts, Kathy Pitts, and Andy Brooks.[4]

### B. Due Process Against State Actors

Plaintiff does bring some claims against state actors: she alleges that the state court refused to hold the requisite hearings in her child custody case, (Doc. No. 26, ¶ 18), that the state court refused to hear motions, complaints, or pleadings in her child custody case, (*id.* at 3), that the State of North Carolina "closed all doors for redress," (*id.* at 5), and that all Defendants denied her access to or any valid redress for her issues. (*Id.* at 6).

To the extent that Plaintiff claims Defendants refused to hold a custody hearing within seven days as required under North Carolina law, (Doc. No. 41, at 8 (citing N.C.G.S. 7B-506)), "it is well settled that violations of state law cannot provide the basis for a due process claim." *Weller*, 901 F.2d at 392 (citing *Clark v. Link*, 855 F.2d 156, 163 (4th Cir.1988)). Still, action that violates state law can otherwise run afoul of federal due process requirements.

---

[3] *See also Prince v. Haley*, 23 F.3d 402 (4th Cir. 1994) ("[Plaintiff's] claim that [a former attorney] conspired with various state actors is a bald allegation which may properly be dismissed"); *Malachowski v. City of Keene*, 787 F.2d 704, 710 (1st Cir. 1986) (dismissing § 1983 claim against private actors, including a children's home and its employee, who plaintiff claimed "joined in a conspiracy with other appellees to wrest [a child] from [the parents'] custody without cause or justification.").

[4] Plaintiff's claims against the Reeves Law Firm and the Crossnore School and Children's Home also fail under § 1983 because neither are "persons." *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

12

Before parsing the remainder of Plaintiff's claims, the Court notes that Plaintiff's filings are replete with contradictions. For example, Plaintiff claims that her daughter was taken into NCDSS custody on September 1, 2022 (and later transferred to foster care and then back to David F. Braun), and that following that action "NO HEARING has ever been held." (Doc. No. 41, at 8). She notes two paragraphs later, however, "[i]n or about October 10, 2022, a hearing was held," (*id.* at 9) and again, "a hearing was held on December 12, 2022." (*Id.*). Plaintiff admitted in a later pleading that the state court "ordered an immediate hearing on February 8, 2023," (Doc. No. 52, at 3), but Plaintiff took issue with the state court's procedure. After that hearing was held – a "4-hour hearing," Plaintiff noted, (*Id.* at 3) – Plaintiff claimed again, "the [state court] is refusing to review or hold hearings on any motion." (Doc. No. 87, at 4). But in that same paragraph, she noted that "[d]uring a recent hearing in the [state court], the [State Judge] states that he will see how things are going in May of 2023 after returning custody of the [child] to David F. Braun." (*Id.*).

Moreover, Plaintiff claims that she is afforded no redress in the North Carolina courts.[5] The North Carolina Court of Appeals has, however, issued no less than five orders – collectively from nine different Court of Appeals judges – approving the action of the North Carolina trial court in Plaintiff's underlying action.[6] While Plaintiff may have wished for a different outcome,

---

[5] (Doc. No. 26, at 19 )"[A]n appellate action was filed and dismissed back to the lower court, again, not following even a scintilla of law")); (*Id.* at 20 ("There is no process available except this [Federal] Court to stop the destruction of my daughter"); (Doc. No. 41, at 13 ("[T]here simply is no other venue or remedy")); (*Id.* ("Plaintiff is asking this [Federal] Court to … compel the state to provide a valid, independent, and non-biased Court")); (*Id.* at 18 ("[E]fforts were undertaken to ask for a higher court (North Carolina Court of Appeals) to intervene. No help was provided"); (Doc. No. 52, at 4 ("[A]n appeal remains")).

[6] *See In Re Staci Anne Braun, M.D.*, No. P22-344, 18CVD139 (N.C. Ct. App. July 15, 2022) (denying Petition for Writ of Supersedeas); *In Re Staci Anne Braun, M.D.*, No. P22-344, 18CVD139 (N.C. Ct. App. July 18, 2022) (denying Petition for Writ of Supersedeas); *In Re Staci*

13

these responses by the North Carolina Court of Appeals contradict Plaintiff's narrative.

Setting aside these issues, and again noting that the *Rooker-Feldman* doctrine bars virtually all the relief Plaintiff seeks,[7] the Court addresses Plaintiff's due process claims head-on: Plaintiff does have a protectible liberty interest under the Constitution's Due Process Clause in the care and custody of her children. *See Weller*, 901 F.2d at 391. Due process claims concern violations of substantive due process or procedural due process, and a violation under either can pave the way for a plaintiff's right to relief. *Id.*

### 1. Substantive Due Process

"The substantive component of the Due Process Clause 'bar[s] certain government actions regardless of the fairness of the procedures used to implement them.'" *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). To violate substantive due process, government action must "shock the conscience." *Id.* at 391-92. Plaintiff's claims here do not rise to the level of a substantive due process violation. *See id.* (holding that no substantive due process claim existed when plaintiff lost custody of his child through state action).

The Fourth Circuit's summary of *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189 (1989) undercuts Plaintiff's claims that the State failed to protect her daughter from David F. Braun:

---

*Anne Braun, M.D.*, No. P22-344, 18CVD139 (N.C. Ct. App. July 18, 2022) (denying Motion for Temporary Stay); *In Re Staci Anne Braun, M.D.*, No. P22-344, 18CVD139 (N.C. Ct. App. August 29, 2022) (denying Petition for Writ of Mandamus); *In Re Staci Anne Braun, M.D.*, No. P22-344, 18CVD139 (N.C. Ct. App. September 14, 2022) (denying Petition for Writ of Supersedeas).

[7] *See Jordahl*, 122 F.3d at 202 (applying *Rooker-Feldman* doctrine where "in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual."); *Alden*, 2020 WL 912783, at *5 (applying *Rooker-Feldman* to "constitutional claims that are inextricably intertwined with questions ruled upon by a state court, as when success on the federal claim depends upon a determination 'that the state court wrongly decided' the issues before it.") (quoting *Plyler*, 129 F.3d. at 731).

> If [the parent] is seeking relief on the basis that the State harmed [the child] by failing to protect him from his mother or grandmother, no due process claim exists. In [*DeShaney*], the Supreme Court held that a State's failure to protect an individual against private violence does not violate substantive due process rights, because the State has no duty to provide its members with adequate protective services. … It is even more clear that harm suffered by a child in the custody of a parent or grandparent is not harm inflicted by the State. Therefore, the complaint fails to assert federal jurisdiction under the substantive component of the due process clause.

*Weller*, 901 F.2d at 392. Applying this precedent, Plaintiff fails to assert federal jurisdiction under the substantive component of the due process clause.

### 2. Procedural Due Process

Procedural due process concerns the procedures by which a state actor interferes with a plaintiffs' constitutional rights. Here, Plaintiff asserts that the Defendants denied her a hearing after placing her child into DSS custody, and she alleges that Wilkes County DSS workers conspired in different ways to prevent such a hearing from occurring. *Weller* established that "a parent is entitled to a hearing initiated by the State before he may be deprived of the custody of his child, and in an emergency a prompt hearing may ratify the state action." 901 F.2d at 398.

A failure to follow such procedures could constitute a due process violation, and thus, Plaintiff's allegations, if proven, could rise to that level. *See id.* at 393 (noting a procedural due process violation could arise where plaintiff alleged that "defendants completely denied [plaintiff] a hearing to determine whether the transfer of custody was warranted, so that there was no judicial ratification of the State's emergency action" and that "[DSS] workers … ignored his requests for such a hearing."). While deprivation of custody without any hearing at all would be a due process violation, *see id.* at 396, it is clear that the state court *did* indeed hold hearings, and that the North Carolina Court of Appeals approved of at least some procedures. Plaintiff presents her claims as

Constitutional ones, but a review of her complaint and motions reveals that her grievance is with the *outcome* of state court procedures and not with a lack of any such procedure at all. Again, this Court is jurisdictionally barred from reviewing the outcome of Plaintiff's state court action. *See Jordahl*, 122 F.3d at 202; *Alden*, 2020 WL 912783, at *5 (quoting *Plyler*, 129 F.3d. at 731). Still, even if some claims do remain under this Court's jurisdictional purview, those claims are likewise dismissed, as discussed below.

### a. Sovereign Immunity of State Defendants

Assuming Plaintiff's allegations did show a due process violation – which they do not – her § 1983 claim faces one final hurdle: claims against institutional defendants and officials of those agencies must withstand the Eleventh Amendment's jurisdictional bar of sovereign immunity.[8] *Id.* at 398 (noting the Eleventh Amendment is a jurisdictional issue). Conduct by seven of the seventeen defendants in this case is "fairly attributable" to the State: the State of North Carolina, Eastern Carolina University, Erica Hamby, Sierra Becerra, Dena Hayworth, "the Unknown Co-Conspirator" (by which Plaintiff means her state court Judge William F. Brooks), and Jessica Bryant.

"The Eleventh Amendment embodies the principle of sovereign immunity and prohibits suit by private parties against states in federal courts unless a state has waived its immunity." *Weller*, 901 F.2d at 397. Plaintiff has not suggested that the State of North Carolina has waived its immunity, and, indeed, the State of North Carolina made clear it has not. (Doc. No. 61, at 11-12, 15-16). Without such waiver, Plaintiff's claims cannot proceed against the State of North Carolina.

---

[8] Sovereign immunity bars claims for damages, but not necessarily injunctive relief. *See generally Ex parte Young*, 209 U.S. 123, 126 (1908) (holding that sovereign immunity does not bar injunctive relief). Because Plaintiff's claims for injunctive relief are otherwise jurisdictionally barred or improperly pled, however, *see* Section II, *supra*, Plaintiff's claims for damages under § 1983 are all that remain.

*See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity").

Moreover, claims under § 1983 are applicable only to "person[s]," and not to states or other institutions. *Id.* ("[A] State is not a 'person' within the meaning of § 1983") (quoting 42 U.S.C. § 1983 ("Every *person* who, under color of any statute … subjects … any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ….") (emphasis added)). Therefore, this Court has no jurisdiction over Plaintiff's claims against the State of North Carolina.

The Court likewise holds no jurisdiction over Plaintiff's claims against Eastern Carolina University ("ECU"). ECU is a public university,[9] and as a public university, ECU enjoys sovereign immunity under the Eleventh Amendment.[10] In addition, ECU is not a "person" for purposes of § 1983, and thus, this Court cannot assert jurisdiction over Plaintiff's claims against ECU.

Erica Hamby, Sierra Becerra, and Dena Hayworth are social workers for the Wilkes County Department of Social Services. At the outset, a review of the complaint reveals no allegations against Dena Hayworth (other than conclusory statements of law naming "all defendants"). With no factual basis upon which to base a claim against Ms. Hayworth, Plaintiff's claims against Ms.

---

[9] *See Eastern Carolina University*, The University of North Carolina System, https://www.northcarolina.edu/institution/east-carolina-university/ (last visited Apr. 12, 2023).

[10] *See Huang v. Bd. of Governors of Univ. of N. Carolina*, 902 F.2d 1134, 1138 (4th Cir. 1990); *see also Bin Xu v. Univ. of N.C. at Charlotte* ("UNCC"), Civ. No. 3:08–CV–403–DCK, 2009 WL 7216040, at *3 (W.D.N.C. 30 Sept. 2009), *mem. and recomm. adopted in relevant part by* 2010 WL 5067423 (6 Dec. 2010).

Hayworth are dismissed.[11]

Allegations against Ms. Hamby and Ms. Becerra are also sparse. Plaintiff references Ms. Hamby twice, in Counts V and X, alleging she was among those to violate Plaintiff's due process rights by "concocting a scheme to illegally abduct, traffic and conceal the Plaintiff's minor daughter," (Doc. No. 26, at ¶ 44), and "harass[ing] and interfer[ing] with witnesses and experts … to prevent the Plaintiff from seeking redress." (*Id.* at ¶ 48). Plaintiff references Ms. Becerra once, counting her among those who concocted the scheme to abduct and traffic Plaintiff's child. (*Id.* at ¶ 44). These allegations fail to survive Defendants' motions to dismiss, *see Iqbal*, 556 U.S. at 678, but even if these statements did state a claim under § 1983 against Ms. Hamby and Ms. Becerra (and assuming Plaintiff pled facts against Ms. Hayworth), these three defendants are shielded by absolute immunity, and this Court has no jurisdiction over Plaintiff's claims against them.

> Like a prosecutor, a social worker must exercise her best judgment and discretion in deciding when to file a Removal Petition. The welfare of the state's children would be jeopardized if social workers had to weigh their decision in terms of their potential personal liability. In short, the denial of absolute immunity here has the potential to adversely affect the efficient functioning of the state's child welfare system. Additionally, the chances are high that suits against the social workers would occur with some degree of regularity. Parents, resentful of and humiliated by an attempt to usurp their rights, would likely channel their frustration "into the ascription of improper and malicious actions to the State's advocate.

*Vosburg v. Dep't of Soc. Servs.*, 884 F.2d 133, 137-38 (4th Cir. 1989). Therefore, "absolute immunity applies … to those activities of social workers that could be deemed prosecutorial." *Id.* "That immunity extends only to prosecutorial actions, however, including preparing and filing a

---

[11] *See Iqbal*, 556 U.S. at 678 (To survive a motion to dismiss, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *see also Weller*, 901 F.2d at 398 (affirming dismissal where plaintiff outlined no specific allegations against the defendant under § 1983); *id.* at 391 (dismissing claims where there are no "express allegations within the complaint to suggest any violation").

removal petition and prosecuting that action." *Evans v. Perry*, 578 F. App'x 229, 232 (4th Cir. 2014) (citing *Vosburg*, 884 F.2d at 135-38).

To determine whether an action is prosecutorial, rather than investigative (investigative actions are afforded qualified immunity),[12] this Court looks to whether the action is "closely associated with the judicial process." *Burns v. Reed*, 500 U.S. 478, 495 (1991). "Actions taken prior to a determination to pursue judicial action are protected by qualified immunity, while actions taken in the judicial phase are protected by absolute immunity." *Kline v. Cleveland Cnty.*, No. 119CV00197MOCWCM, 2020 WL 1692348, at *7 (W.D.N.C. Apr. 7, 2020) (citing *Goldstein v. Moatz*, 364 F.3d 205, 214 (4th Cir. 2004)) (cleaned up).

The actions identified by Plaintiff are prosecutorial in nature because they relate only to the judicial process – either the removal of Plaintiff's child from Plaintiff's custody, (Doc. No. 26, at ¶ 17), or the prosecution of that removal action. (*Id.* at ¶ 22, 24).[13] Erica Hamby, Sierra Becerra, and Dena Hayworth are therefore entitled to absolute immunity, and this Court has no jurisdiction over Plaintiff's claims against them under § 1983.

Jessica Bryant, the guardian ad litem appointed in Plaintiff's custody case, is also entitled to absolute immunity. Like her claims against the social workers, Plaintiff pleads few facts against

_____

[12] To the extent that any actions by Ms. Hamby, Becerra, or Hayworth could be considered investigative rather than prosecutorial, those actions would be afforded qualified immunity. Where only "sparse, factually unsupported allegations" are lodged against a social services worker, qualified immunity protects that worker from liability. *Booker v. S.C. Dep't of Soc. Servs.*, 583 F. App'x 147, 148 (4th Cir. 2014); *see also Renn By & Through Renn v. Garrison*, 100 F.3d 344, 349 (4th Cir. 1996) (addressing qualified immunity). The allegations against Ms. Hamby, Becerra, and Hayworth fall short of the Fourth Circuit's bar, and thus, even if their actions were considered to fall outside the judicial process, Plaintiff's claims against Ms. Hamby, Becerra, and Hayworth fail.

[13] *See also Kline*, 2020 WL 1692348, at *8 ("To the extent that Plaintiffs' claims could be construed as a simple disagreement with how DSS weighed the evidence before substantiating for neglect and/or abuse, that decision would be protected by absolute immunity because it [is] at the heart of social workers' discretion."); *Sahoo v. Gleaton*, No. 5:16-CV-153-F, 2017 WL 1102623, at *6 (E.D.N.C. Mar. 23, 2017) (extending absolute immunity to social workers).

Ms. Bryant. Plaintiff mentions Ms. Bryant by name once, in Count V, alleging she helped to "concoct[] a scheme to illegally abduct, traffic and conceal the Plaintiff's minor daughter," (Doc. No. 26, at ¶ 44). These claims under § 1983 against Ms. Bryant fail. "A guardian ad litem must be able to function without the worry of possible later harassment and intimidation from dissatisfied parents." *Fleming v. Asbill*, 42 F.3d 886, 889 (4th Cir. 1994). Consequently, a guardian ad litem is shielded by absolute immunity because a "failure to grant immunity would hamper the duties of a guardian ad litem in [her] role as advocate for the child in judicial proceedings." *Id.*

Thus, where any actions by a guardian ad litem occur "within the judicial process" – for example, "[e]ven if [the guardian ad litem] lied to the judge in open court" – those actions are entitled to absolute immunity from § 1983 liability because the guardian ad litem was "still acting as the guardian." *Id.* Ms. Bryant's actions, therefore, are shielded by absolute immunity, and this Court has no jurisdiction over Plaintiff's claims against Ms. Bryant under § 1983.

The final defendant, styled as "unnamed co-conspirator" Judge William F. Brooks, is also entitled to absolute immunity, as noted by Plaintiff herself. (Doc. No. 26, at 25 n.5).

> Judges have long enjoyed absolute immunity from liability in damages for their judicial or adjudicatory acts, primarily in order to protect judicial independence by insulating judges from vexatious actions by disgruntled litigants. Truly judicial acts, however, must be distinguished from the administrative, legislative, or executive functions that judges may occasionally be assigned by law to perform. It is the nature of the function performed—adjudication—rather than the identity of the actor who performed it—a judge—that determines whether absolute immunity attaches to the act.

*Forrester v. White*, 484 U.S. 219, 219–20 (1988) (addressing liability of state court judges). Plaintiff accuses Judge Brooks of only prosecutorial actions.[14] Because Plaintiff's allegations

---

[14] (Doc. No. 26, at ¶ 12) ("[T]he Judge…summarily denied the motion and entered an emergency order"); (*id.* at ¶ 18 ) ("[T]he [Judge] got up, walked away"); (*id.* at ¶ 19) ("[T]he [Judge] appointed a guardian ad litem"); (*id.* at ¶ 34) ("[T]he [Judge] has failed to hold … hearings").

against Judge Brooks are comprised of only prosecutorial actions, Judge Brooks is entitled to absolute immunity and this Court has no jurisdiction over Plaintiff's claims against Judge Brooks.

### IV. Conclusion

**IT IS, THEREFORE, ORDERED** that**:**

1. Defendants' Motions to Dismiss, (Doc. Nos. 57, 60, 63, 82, 94, 103, 105), are **GRANTED**;

2. Plaintiff's Amended Complaint, (Doc. No. 26), is **DISMISSED**; and

3. Plaintiff's Motions for Temporary Restraining Orders and Preliminary Injunctions, (Doc. Nos. 41, 52, and 87), are **DENIED**.

Signed: May 2, 2023

Robert J. Conrad, Jr.
United States District Judge

21